**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0216-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GIOVANNI J. CALABRESE,

    Defendant-Appellant.

_____

Submitted May 26, 2026 – Decided June 9, 2026

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 24-02-0287.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Ethan Kisch, Assistant Deputy Public Defender, of counsel and on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress, defendant Giovanni J. Calabrese pled guilty to second-degree possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1), and was sentenced to five years in prison. He appeals from the July 5, 2024 order denying his motion and his resulting judgment of conviction. Before us, defendant argues:

POINT I

THE LAW DIVISION SHOULD HAVE GRANTED [DEFENDANT]'S MOTION TO SUPPRESS.

A. The State failed to establish that the officer had a reasonable, articulable, and particularized basis that the Uber driver had violated N.J.S.A. 39:4-135.

B. Even if the officer had a legal basis to stop the car, the State failed to establish that the officer had a reasonable, articulable, and particularized basis that [defendant] had violated N.J.S.A. 39:3-76.2f(c).

POINT II

EVEN IF THIS COURT DOES NOT ORDER SUPPRESSION, REMAND FOR A NEW SUPPRESSION HEARING IS NEVERTHELESS REQUIRED BECAUSE THE OFFICER FAILED TO RECORD SEVERAL MINUTES OF VIDEO AND OVER 11 MINUTES OF AUDIO WITH HIS BODY WORN CAMERA.

A-0216-24

We have considered all of defendant's arguments against the record and the applicable legal principles and conclude they are without merit. We accordingly affirm his conviction.

I.

Defendant moved to suppress a handgun and ammunition seized from a search incident to his arrest. The court conducted evidentiary hearings on June 4 and June 12, 2024, from which we discern the following relevant facts.

At the June 4 hearing, Officer Joseph Olivo, a patrol officer with seven years of experience with the Winslow Township Police Department, testified to the events leading to defendant's arrest at around 1:00 a.m. on December 19, 2023. Officer Olivo stated that he was patrolling in a specific area of Winslow Township "due to [a] recent complaint of a firearm offense" that occurred the prior evening, when he observed a vehicle being operated by an Uber driver on the other side of the street "stopped in the center of the roadway" and in a manner that did not permit him to pass while the driver waited to pick up two individuals who eventually entered the rear passenger side.

Officer Olivo began following the vehicle and he observed the car failing "to maintain [its] lane." He described the road as two lanes with portions that contained "solid yellow lines" and other sections with "dotted yellow lines." He

A-0216-24

observed the vehicle "[went] over and onto the line" at least twice, but not so far as to go into the other lane. After following the vehicle for approximately a mile and a half, Officer Olivo initiated a motor vehicle stop. He testified that although he initially suspected the driver may have been intoxicated, he confirmed after stopping the car and speaking with the driver, that he did not "appear to be under the influence of any substances."

Officer Olivo testified that as the "vehicle was coming to a stop," he observed that the "rear passengers did not have their seatbelt[s] on" but clarified he specifically observed the unfastened seatbelt once both vehicles were fully stopped on the side of the roadway. On this point, Officer Olivo stated he distinctly remembered observing the unfastened "seatbelt buckles . . . against the pillar" from his patrol vehicle after he placed his spotlight on the vehicle's interior. Officer Olivo explained there were two rear occupants in addition to the driver, and that the two rear passengers "did not have [fastened] seatbelt[s]."

The officer first discussed the reasons for the stop with the driver and explained he had improperly parked in the middle of a roadway. Officer Olivo requested the driver's license and also asked both rear passengers for their personal identification information in light of their unfastened seatbelts. As later confirmed by the officer's body-worn camera (BWC) footage, defendant

A-0216-24

was one of the rear passengers, and was not wearing a seatbelt and repeatedly explained to the officer he "did not know [he] had to wear one in the backseat." Officer Olivo returned to his patrol vehicle and confirmed the identities of the driver and passengers and learned both rear passengers had separate outstanding warrants.

After arresting the other rear passenger for her warrant and searching her bag, Officer Olivo advised defendant he also had an outstanding warrant and requested he exit the vehicle. Defendant complied and after he was placed in handcuffs, "advised that he had a handgun in his waistband." After arresting the passengers, Officer Olivo testified the driver "was given a verbal warning for the violations . . . and then . . . left the area," without a traffic violation due to his "discretion."

As noted, the State introduced Officer Olivo's BWC footage, which corroborated that after initiating the stop, defendant was not wearing a seatbelt, as well as his statement explaining why he was not wearing one. The BWC also confirmed that police dispatch alerted him to defendant's outstanding warrant. Further, the BWC recorded the officer's initial conversation with the driver who acknowledged, and certainly did not dispute, he parked his car in the center of

5

the roadway "when [he] was in the [road, picking up]" both defendant and the other passenger.

A portion of Officer Olivo's BWC footage during the arrest and search of the other passenger did not include audio. Officer Olivo testified he had initially muted the audio during an "officer conversation" in his patrol car while confirming the parties' identification and "forgot that [he] muted it." He stated he inadvertently did not initially re-activate the audio once he re-engaged the parties after having learned about their outstanding warrants.

He ultimately reactivated his audio function of his BWC while arresting the other passenger and placing her in the backseat of a patrol vehicle. That BWC recording corroborated defendant's arrest and his possession of the handgun in his waistband. During the arrest, the BWC footage also captured Officer Olivo explaining to defendant that he pulled over the vehicle because he "thought [the driver] was drunk."

He also stated that he "did not see [the passengers] in the vehicle until [the other passenger] started moving her hair." With respect to this statement, Officer Olivo later clarified that he "misspoke[]," in light of the fact that he clearly saw them "enter the car."

A-0216-24

At the subsequent June 12th hearing, defendant argued Officer Olivo had no basis for his initial stop of the vehicle and maintained he "was coming up with all these violations that he could use to insulate this unlawful stop." For example, defendant argued that the driver's decision to park in the center of the roadway never happened because "no stop occur[ed] immediately after." Further, defendant maintained the officer's statement that he did not initially see the passengers confirmed that he first saw them when the vehicle was already stopped.

Defendant also contended Officer Olivo did not observe the car swerving because he testified the car merely "hit the [yellow] line" but did not "cross into the other lane of traffic." Once the stop was initiated, he argued the officer had no basis to request personal identification information from defendant because the BWC footage "did not show the seat belts hanging from a column."

After considering the testimony and the parties' arguments, the court issued a written order and decision on July 5th denying defendant's motion.[1]

---

[1] The court granted the other passenger's application and specifically suppressed evidence seized from her bag. The court found the search of the bag "exceeded the scope of the search incident to arrest exception" because she was "nowhere within reach of the . . . bag" and was "already in handcuffs." The court also suppressed her statements at the scene because the officers failed to provide Miranda warnings.

A-0216-24

The court found "credible evidence shows that the driver parked his car in the middle of the roadway, more than six inches from the curb side, and not on the right-hand side of the road," in violation of N.J.S.A. 39:4-135, which it found justified the officer's initial stop of the vehicle. The court concluded the BWC footage corroborated his testimony "at least insofar as it showed that the patrolman explained to both the driver and [defendant] that he pulled over the vehicle because it was blocking the roadway." The court further found the BWC footage established the driver acknowledged he blocked the roadway.

The court also determined that the BWC footage supported that defendant was not wearing a seatbelt as defendant told the officer that he did not know he had to wear one in the back seat and did not limit his statement to while the vehicle was stopped. In light of his statement, the court found "the rational inference is that he was not wearing one while as a passenger," and Officer Olivo therefore had "reasonable suspicion [to] justify[] his request for [defendant's] personal identification information" that led to the discovery of his outstanding warrant. The court found the officer's warrantless search was a "valid . . . search incident to arrest," and the discovery of the gun in defendant's waistband was justified under the "plain feel doctrine." Accordingly, the court denied defendant's motion to suppress.

A-0216-24

As noted, defendant subsequently pled guilty to one count of second-degree unlawful possession of a handgun, and the State agreed to dismiss all remaining charges, including the charge related to defendant's outstanding warrant. The court sentenced defendant, consistent with the terms of the plea agreement. This appeal followed.

II.

In his first point, defendant contends the court erred in finding Officer Olivo had a reasonable suspicion that the Uber driver violated N.J.S.A. 39:4-135. He relies on State v. Boone, 479 N.J. Super. 193, 205 (App. Div. 2024), for the proposition that Officer Olivo's testimony did not establish he had a "lawful basis to stop the car for a violation of that motor vehicle provision" and "a closer look at the State's proofs reveals significant gaps in [his] testimony." On this point, defendant limits his argument to the claim that the officer never specifically testified to the width of the road or that the Uber driver parked "six inches from the edge of the roadway," as required to establish a violation of N.J.S.A. 39:4-135.

Next, defendant maintains even if the officer had a legal basis to stop the car, the officer did not have reasonable suspicion "sufficient to require [defendant] to provide identification because he never saw [defendant] without

9

a seatbelt while the car was operating," as required by N.J.S.A. 39:3-76.2f(c). Specifically, he contends that the officer's testimony confirmed only that he observed defendant not wearing a seatbelt after he had already exited his patrol car, contrary to the statutory requirement that the vehicle was being "operated on a street or highway." (quoting N.J.S.A. 39:3-76.2f(c)).

Finally, for the first time on appeal, defendant argues the matter should be, at a minimum, remanded for a new suppression hearing because of the court's failure to apply the rebuttable presumption established by N.J.S.A. 40A:14-118.5, in light of the officer's "failure to record several minutes of video and over [eleven] minutes of audio with his [BWC]." Specifically, he contends Officer Olivo violated the BWC requirements by (1) failing to activate his BWC video and audio once he began following the car, and (2) failing to capture audio for a significant portion of the stop after he "turned his BWC's audio off while he was sitting alone in his patrol car running the . . . driver's license and looking up [defendant's] identity." He argues the "missing video and audio from these critical periods of time" could have revealed that: (1) "the car was stopped without reasonable suspicion of a motor vehicle violation," (2) "the officers had targeted the car without good (or based on an improper) reasons," (3) "they did not have reasonable suspicion to request [defendant]'s identification

10

information," or (4) "they had received contradictory information about [defendant]'s warrant."

III.

We begin our analysis by restating the well-understood standard of review, followed by the applicable substantive and constitutional legal principles that inform and guide our analysis.

Our review of a trial court's decision on a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021). We will defer to the trial court's factual findings so long as they are supported by sufficient evidence in the record, setting them aside only when "clearly mistaken." State v. Caneiro, 262 N.J. 288, 300 (2025). The trial court's legal interpretations, however, are reviewed de novo. Ibid.

A.

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures." State v. Smart, 253 N.J. 156, 164 (2023) (quoting State v. Nyema, 249 N.J. 509, 527 (2022)). "A lawful roadside stop by a police officer constitutes a seizure under both the Federal and New Jersey Constitutions." State v. Nelson, 237 N.J. 540, 552 (2019) (quoting

State v. Dunbar, 229 N.J. 521, 532 (2017)).  "A lawful roadside stop by a police officer constitutes a seizure under both the Federal and New Jersey Constitutions."  Dunbar, 229 N.J. at 532.

"To justify a stop, an 'officer must have a reasonable and articulable suspicion that the driver . . . is committing a motor-vehicle violation' or some other offense."  State v. Carter, 247 N.J. 488, 524 (2021) (quoting State v. Scriven, 226 N.J. 20, 33-34 (2016)).  "To establish reasonable suspicion, 'the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the suspicion."  State v. Pitcher, 379 N.J. Super. 308, 315 (App. Div. 2005) (quoting State v. Pineiro, 181 N.J. 13, 21 (2004)).  "In determining whether reasonable suspicion exists, a court must consider 'the totality of the circumstances—the whole picture.'"  Nelson, 237 N.J. at 554 (quoting State v. Stovall, 170 N.J. 346, 361 (2002)).  Notably, "[t]he State need prove only that the police lawfully stopped the car, not that it could convict the driver of the motor-vehicle offense."  Boone, 479 N.J. Super. at 208 (quoting State v. Williamson, 138 N.J. 302, 304 (1994)).

N.J.S.A. 39:4-135 prohibits stopping or parking a vehicle in the street where parking is not permitted. Specifically, N.J.S.A. 39:4-135 provides, in relevant part:

> The operator of a vehicle shall not stop, stand or park the vehicle in a roadway other than parallel with the edge of the roadway headed in the direction of traffic, on the right-hand side of the road and with the curb side of the vehicle within six inches of the edge of the roadway . . . .

We are satisfied the record is replete with evidence to support the court's finding that Officer Olivo had reasonable suspicion to justify his initial stop of the driver for violating N.J.S.A. 39:4-135. In addition to the officer's credible testimony that he observed the car stopped in the middle of the roadway, the BWC footage confirmed that the driver himself acknowledged and did not dispute he had parked in the center of the road. To the extent defendant argues that Officer Olivo did not specifically testify that he observed the car parked further than six inches from the curb nor to the exact width of the road, we reject these arguments as meritless in light of his detailed and consistent testimony that he observed the car in the middle of the roadway such that he could not pass on its opposite side.

Further, we reject defendant's reliance on Boone as the facts before us bear no resemblance to those in that case and which supported the court's

A-0216-24

holding. In <u>Boone</u>, we held an officer did not have reasonable suspicion to justify his traffic stop of a defendant for his alleged failure to maintain his lane while driving. 479 N.J. Super. at 205-07. Unlike the scant testimony in <u>Boone</u> where the officer only stated the defendant crossed the center line "more than one time but was not driving erratically," Officer Olivo testified credibly that not only did the Uber driver fail to maintain his lane but also stated that he was blocking the roadway. <u>Id.</u> at 208. Further, unlike the situation in <u>Boone</u> where the officer received instructions to "go make the stop" from another officer, the testimony before us confirms Officer Olivo observed the vehicle commit not one but two clear and separate traffic infractions. Simply put, none of the concerns regarding the stop in <u>Boone</u> exist here. <u>Id.</u> at 198-99.

B.

"Temporary detention during an investigatory traffic stop, even if brief and limited, constitutes a 'seizure' of 'persons.'" <u>State v. Sloane</u>, 193 N.J. 423, 430 (2008). "[W]hen a police officer conducts a traffic stop of a private vehicle, the passenger as well as the driver are seized under both the federal and state constitutions." <u>Id.</u> at 431. Our Supreme Court in <u>State v. Smith</u>, 134 N.J. 599, 615 (1994), recognized that a passenger has greater rights than the driver. Those greater rights, however, arise only when the passenger has not engaged in

14

culpable conduct and the only reason for the police intervention is the traffic violation committed by the driver. Ibid. Accordingly, "a demand for a passenger's identification . . . is permitted when police have a basis for focusing on the passenger." State v. Boston, 469 N.J. Super. 223, 259-60 (App. Div. 2021) (quoting State v. Sloane, 193 N.J. 423, 438-39 (2008)).

In any event, even without such a basis, "if a motor vehicle is subject to valid police stop, the police may question the occupants, even on a subject unrelated to the purpose of the stop, without violating the Fourth Amendment, so long as such questioning does not extend the duration of the stop." State v. Hickman, 335 N.J. Super. 623, 636 (App. Div. 2000) (citations omitted). Further, "[i]f, during the course of the stop or as a result of the reasonable inquiries initiated by the officer, the circumstances 'give rise to suspicions unrelated to the traffic offense, an officer may broaden [the] inquiry and satisfy those suspicions.'" State v. Dickey, 152 N.J. 468, 479-80 (1998) (alteration in original) (citations omitted).

N.J.S.A. 39:3-76.2f(a) requires drivers "of a passenger automobile operated on a street or highway in this State" to wear seat belts. N.J.S.A. 39:3-76.2f(c) specifically requires "[a]ll rear seat passengers . . . of a passenger automobile operated on a street or highway in this State [to] wear a properly

adjusted and fastened safety seat belt system."  Generally, whether a vehicle is in operation or not "revolves primarily around the defendant's intent to operate the vehicle."  State v. Morris, 262 N.J. Super. 413, 418 (App. Div. 1993) (citing State v. Tischio, 107 N.J. 504, 513 (1987)).  For example, it is a well-established principle that under N.J.S.A. 39:4-50(a) for driving while intoxicated, the term operation should be broadly interpreted.  State v. Ebert, 377 N.J. Super. 1, 10 (App. Div. 2005) ("The term 'operate' must be given broad construction.").

We are likewise satisfied there is sufficient credible evidence to support the conclusion that defendant was not wearing his seatbelt, in violation of N.J.S.A. 39:3-76.2f(c), and reject defendant's argument that the evidence does not support the court's factual findings.  Officer Olivo's testimony confirmed that because of the poor lighting, he specifically shined his light into the vehicle's interior, and the light glinted against the metal of the buckle as it sat unfastened next to defendant.  Further, as noted by the court, the BWC recording contained footage of defendant sitting in the backseat without a fastened seatbelt, and upon Officer Olivo's inquiry, defendant explained that he was unaware he had to fasten his seatbelt as a passenger in the back seat, and did not

16

suggest or imply he was ever wearing his seatbelt at any time.[2]  Accordingly, we are satisfied Officer Olivo had reasonable suspicion and a sufficient basis to justify his request of defendant's personal identification information.

C.

Under N.J.S.A. 40A:14-118.3(a), "every uniformed State, county, and municipal patrol law enforcement officer shall wear a [BWC] that electronically records audio and video while acting in the performance of the officer's official duties, except" in certain limited circumstances.  Specifically, the statutory framework requires that:

> the video and audio recording functions of a [BWC] shall be activated whenever the officer is responding to a call for service or at the initiation of any other law enforcement or investigative encounter between an officer and a member of the public, in accordance with applicable guidelines or directives promulgated by the Attorney General. . . .  The [BWC] shall remain activated until the encounter has fully concluded and the officer leaves the scene.
>
> [N.J.S.A. 40A:14-118.5(c)(1).]

---

[2]  Defendant contends, in a footnote, that because the car "was pulled over and parked on the side of the road . . . [he] did not have any legal obligation to wear a seat belt at that time."  As noted, that contention is contrary to both Officer Olivo's credible testimony and defendant's own statement in the BWC footage in which he states he did not know he had to wear a seatbelt while in the backseat without any temporal limitation on his understanding.

Section 5.2 of the Attorney General's BWC guidelines, promulgated pursuant to the authority provided in N.J.S.A. 40A:14-118.5(c)(1),[3] further clarify that activation is required:

> [W]henever the officer is responding to a call for service or at the initiation of any other law enforcement or investigative encounter between an officer and a member of the public . . . . [I]n such situations, the officer must activate the camera at the first reasonable opportunity to do so and it shall remain activated until the encounter has fully concluded and the officer leaves the scene.
>
> [Off. of the Att'y Gen., Law Enf't Directive No. 2022-1, Update to Body Worn Camera Policy (Jan. 19, 2022).]

As relevant to defendant's newly minted argument before us, Section 5.2 further provides a list of "such situations [where] the officer must activate the camera at the first reasonable opportunity." These situations include: "the officer is interviewing a witness in the course of investigating a criminal

---

[3] The Attorney General's BWC guidelines were first promulgated in 2015 pursuant to N.J.S.A. 52:17B-98, prior to the enactment of N.J.S.A. 40A:14-118.5, but was later revised in 2021 and 2022 after the 2021 enactment. We also note "the failure to comply with [the Attorney General's BWC guidelines] does not constitute a constitutional violation." State v. Seligman, 480 N.J. Super. 509, 522 (App. Div. 2025).

offense;" "the officer is making an arrest;" and "the officer is conducting any kind of search." Ibid.; see also Seligman, 480 N.J. Super. at 521-24.

When an officer fails to turn on their BWC when it should be activated, N.J.S.A. 40A:14-118.5(q)(2) provides:

> [T]here shall be a rebuttable presumption that exculpatory evidence was destroyed or not captured in favor of a criminal defendant who reasonably asserts that exculpatory evidence was destroyed or not captured.

Further, N.J.S.A. 40A:14-118.5(c)(2)(c) provides officers, subject to certain conditions, are permitted to momentarily deactivate the video and audio recording functions of their BWC while "participating in a discussion pertaining to criminal investigation strategy and planning, provided that the discussion is not conducted in the immediate presence of a civilian."

As a threshold matter, when a party does not properly preserve an issue for appeal, we may consider whether it rises to the level of plain error under Rule 2:10-2. State v. Clark, 251 N.J. 266, 286-87 (2022). Such a high bar "requir[es] reversal only where the possibility of an injustice is 'real' and 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Trinidad, 241 N.J. 425, 445 (2020) (quoting State v. Macon, 57 N.J. 325, 336 (1971)).

Further, we have previously concluded the existence of this rebuttable presumption does not apply automatically, but only on defendant's presentation of the issue during the motion to suppress hearing, absent here. State v. Jones, 475 N.J. Super. 520, 535 (2023) ("Issues pertinent to whether defendant is entitled to the rebuttable presumption under N.J.S.A. 40A:15-118.5(q)(2), and whether the State can successfully rebut the presumption . . . shall abide the presentation of the parties' arguments and evidence and shall be decided in the first instance by the motion court . . . ."). The statute contains similar language requiring a defendant to "reasonably assert that exculpatory evidence was destroyed or not captured." N.J.S.A. 40A:14-118.5(q)(2) (emphasis added). Because defendant failed to raise this issue with the court, we could dismiss defendant's argument.

We, nevertheless, address the issue on the merits and consider it for plain error and conclude a remand is unnecessary. To the extent defendant contends the audio contained contradictory information regarding his outstanding warrant, we conclude the BWC footage, prior to Officer Olivo's deactivation of its audio, corroborated that radio dispatch informed the officer that defendant did, indeed, possess an outstanding warrant. Further, once the audio was re-initiated, the BWC depicted Officer Olivo explaining to defendant and the other

officers that the basis for his arrest was the confirmed outstanding warrant. Further, defendant's judgment of conviction reflects defendant's initial charges included a charge stemming from a warrant, which as noted, was later dismissed.

With respect to defendant's other contentions regarding potential exculpatory evidence, we conclude any presumption is overcome by: (1) the credible testimony that Officer Olivo observed the car parked in the middle of the road and subsequent concerning manner in which the driver was operating the vehicle; (2) the driver's acknowledgment; and (3) the BWC of defendant in the back seat without a fastened seatbelt, and his statement that he was unaware he was required to wear one, without limiting his statement to when the vehicle was parked. Further, even if we reject the State's argument that the statute and the guidelines require activation only upon actual interaction and contact with an individual, as opposed to when an officer is following a vehicle as Officer Olivo did here, we are satisfied there is sufficient objective and credible evidence in the record that supports the officer's initial stop, his request for defendant's identification information, and his subsequent arrest, to rebut any presumption.

21

To the extent we have not specifically addressed any of defendant's arguments, it is because we have concluded they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0216-24